UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| JING LI, | |
|---|---|
| *Plaintiff,* | Civil Action No.: 3:17-cv-11678 (PGS) |
| v. | **MEMORANDUM AND ORDER** |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al. | |
| *Defendants.* | |

**SHERIDAN, U.S.D.J.**

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint, or, in the alternative, for summary judgment. (ECF No. 31). This case arises from an immigration dispute regarding Plaintiff's eligibility to live and work in the United States. For the reasons expressed herein, Defendant's motion is granted and Plaintiff's complaint (ECF No. 27) is dismissed in its entirety.

I

Since this Court extensively set forth the underlying facts and procedural history of the case in its August 14, 2018 Memorandum and Order (ECF No. 19), a brief factual and procedural history follows.

Plaintiff, Jing Li, is a national and citizen of the People's Republic of China. (Am. Compl., ECF No. 27, at ¶ 8). Plaintiff is the president of GreenTV USA, Inc., a subsidiary of GreenTV Corporation in China. (*Id.* at ¶ 15). On May 13, 2013, Plaintiff was granted approval of an L-1A

1

visa,[1] which was valid through June 1, 2013 to May 31, 2014. (*Id.* at ¶ 16; *see also* Decl. of Sheila Bays, ECF No. 31-4, at ¶ 4). Plaintiff arrived in the United States on September 27, 2013, and on February 18, 2014, applied for an extension of her L-1A visa. (*Id.* at ¶ 18; Bays Decl., at ¶ 5). Though the United States Custom and Immigration Services [hereinafter the "USCIS"] offers a premium processing option for an additional fee, which guarantees processing within fifteen calendar days, Plaintiff did not request premium processing for this petition. (Bays Decl. at ¶¶ 4-5). Plaintiff returned to China to wait until her L-1A extension was approved. (Am. Compl. at ¶ 19).

Plaintiff's L-1A extension was granted on February 6, 2015, and was valid from June 3, 2013 through May 31, 2015. (*Id.* at ¶ 20; Bays decl. at ¶ 5). This Court notes, however, that following this Court's Memorandum and Order dated August 14, 2018, the USCIS amended Plaintiff's L-1A validity dates to June 1, 2014 through **May 31, 2016**. (Bays Decl. at ¶ 5; Am. Compl. at ¶ 36). After waiting for her L-1A visa extension to be processed, Plaintiff arrived in the United States on May 8, 2015, with only 24 days left on her extension approval. (Am. Compl. ¶ at 21).

On May 20, 2015, with her L-1A set to expire on May 31, 2015, Plaintiff filed an I-485 "Application to Register Permanent Resident or Adjust Status" to adjust her status to that of a lawful permanent resident; her employer also filed an I-140 petition "Immigrant Petition for Alien Worker." (Am. Compl. at ¶ 22). The USCIS approved Plaintiff's I-140 petition on January 29,

---

[1] An L-1A nonimmigrant visa "enables a U.S. employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States" and "enables a foreign company which does not yet have an affiliated U.S. office to send an executive or manager to the United States with the purpose of establishing one."
L-1A Intracompany Transferee Executive or Manager, *U.S. Citizenship and Immigration Services*, https://www.uscis.gov/working-united-states/temporary-workers/l-1a-intracompany-transferee-executive-or-manager (last visited Sept. 17, 2019).

2016. (*Id.* at ¶ 23). Yet, in connection with Plaintiff's I-485 application, Plaintiff did not file an I-765 "Application for Employment Authorization" which would have furnished to her an Employment Authorization Document ("EAD") and would have authorized her to work in the United States. (Bays Decl. at ¶ 12). According to Defendant, despite Plaintiff's failure to file an I-765 and obtain an EAD, she continued to engage in employment activity in the United States while her I-485 application was pending. (Defs.' Statement of Material Facts ("SOMF") at ¶ 16).

On May 18, 2017, the USCIS issued to Plaintiff a Request For Evidence, seeking information regarding her pending I-485 application. (Am. Compl. at ¶ 28). Specifically, the USCIS requested proof of Plaintiff's continuous employment authorization in the United States from June 1, 2015 to the present, which could be demonstrated by various documents including employment authorization documents, Form I-797 approval notices, or copies of Form I-94 arrival/departure records. (USCIS Req. for Evidence, Defs.' Ex. B, ECF No. 31-3, at US-00024). In response to the Request for Evidence, Plaintiff provided the following documents:

1. A Form I-797A Approval Notice showing she had been approved for L-1A status from June 1, 2013 to May 31, 2015 (which was later amended to expire May 31, 2016);
2. A Form I-797 Approval Notice for the underlying Form I-140 immigrant Petition for Alien Worker;
3. A Form I-797 I-131, Approval Notice for her Application for Travel Document; and
4. A copy of her most recent I-94 showing an admission date of April 1, 2017 and an expiration date of March 31, 2018.

(Am. Compl. at ¶ 29).

Plaintiff did not furnish to the USCIS a copy of an I-765 application or an EAD.

On July 24, 2017, the USCIS denied her I-485 application in a letter stating, in part, "after filing your Form I-485, maintaining work authorization is required . . . The documents you submitted did not establish that you had work authorization form June 1, 2015 until the present."

3

(Am. Compl., Ex. E, ECF No. 27-5, at 1-2). Plaintiff thereafter filed a motion for reconsideration with the USCIS, which the USCIS denied on August 8, 2017, citing that Plaintiff "did not provide new evidence establishing that [Plaintiff] had work authorization from June 1, 2015 until the present." (Am. Compl., Ex. F, ECF No. 27-6, at 1).

Plaintiff then filed suit in November 2017, seeking to overturn the USCIS decision denying her I-485 application for adjustment of status. *See Jing Li v. United States Citizenship & Immigration Servs.*, No. 17-11678 (PGS), 2018 U.S. Dist. LEXIS 137558, at *6 (D.N.J. Aug. 14, 2018). After oral argument on the first motion to dismiss, this Court determined it lacked subject matter jurisdiction to review the denial of Plaintiff's I-485 application for adjustment of status because "[a]djustment of status applications are governed by 8 U.S.C. § 1255, which provide[s] that adjustment of status decisions [are] committed to the Attorney General's discretion, and . . . this Court is precluded from reviewing any discretionary decisions by CIS." *Id.* at *16-17. This Court further concluded that "Plaintiff was rendered a final judgment when her I-485 application for status adjustment was denied, which is a discretionary decision made by the CIS and the Attorney General. Because the only relief Plaintiff is seeking is an order overturning CIS's denial of her I-485 application for adjustment of status, jurisdiction in this Court is specifically precluded under § 1252(a)(2)(B)." *Id.* at *17. This Court also directed Defendants to "review the processing as well as the decision made in connection with Plaintiff's L-1A extension application." *Id.* at *21.

Following this Court's Order, the USCIS reviewed its decision concerning Plaintiff's L-1A extension, and in its new decision, the USCIS explained that the L-1A extension petition was granted "with incorrect approval dates" and should have been granted for the period **from June 1, 2014 to May 31, 2016**. (USCIS Decision, Sept. 25, 2018, Ex. I, ECF No. 27-9, at 1-2). The USCIS issued an amended approval notice to correct the validity dates, and explained that "timely

4

filed L-1A petitions . . . are approved with validity dates beginning the day after the prior status expired or will expire, not the date of adjudication." (*Id.* at 2). The decision also noted that Plaintiff's "L-1A extension petition was timely filed prior to May 31, 2014, the date Ms. Li's initial L-1A status was set to expire. Accordingly, Ms. Li received an automatic extension of her employment authorization with GreenTV USA, Inc. for a period not to exceed 240 days beyond the expiration of her initial L-1A status per 8 CFR 274a.12(b)(12), (20). Thus, Ms. Li was authorized to continue working for GreenTV USA, Inc. in the United States until January 26, 2015." (*Id.* at 2).

Based on the events subsequent to this Court's August 14, 2018 Memorandum and Order, the Court granted Plaintiff's request to reopen the case, and directed Plaintiff to file an amended complaint. On September 4, 2019, this Court held oral argument on the issues briefed.

In her amended complaint, Count I alleges that Defendant's actions conflicted with the USCIS policy manual Chapter 6, INA 245(c)(2) and INA 245(c)(8). (Am. Compl. at ¶ 40-43). Count II alleges that Defendant's actions were arbitrary, capricious and unreasonable because the USCIS later approved Plaintiff's form I-765 application for employment authorization in February 2018 and granted Plaintiff an Employment Authorization Card. (*Id.* at ¶ 44). In Count III, Plaintiff alleges that Defendants "must be held accountable for its own mistake and not to blame the applicant for being misled," and that, because it was "USCIS' fault that the Plaintiff did not file another L-1A extension application . . . Plaintiff should be given the 240 authorized employment days she would have received had she filed another L-1A extension application." (*Id.* at ¶ 57). Finally, Plaintiff argues that this Court should hold Defendant in contempt of Court for failing to comply with this Court's August 14, 2018 Memorandum and

Order. Ultimately, Plaintiff seeks a holding from this Court that she "maintained valid work authorization from June 1, 2015, to present." (*Id.* at ¶ 63-66).

Defendants bring the present motion to dismiss, or, in the alternative, for summary judgment, arguing first that the Court lacks jurisdiction (as it previously found) to review adjustment of status determinations, because Plaintiff is attempting to create jurisdiction where there is none by challenging the factual and legal predicates upon which the status determination was made. (Defs.' Br. in Support of Mot. to Dismiss and Summary Judgment, ECF 31-1, at 16-18). According to Defendants, this is the same as challenging the adjustment of status determination. *Id.* On the merits, Defendants argue that this Court should dismiss Plaintiff's amended complaint because, first, the USCIS's decision on July 24, 2017 was not arbitrary, capricious, of manifestly unjust; second, any employment authorization documents issued in 2018 have no bearing on the USCIS's adjustment of status determination in 2017; third, Plaintiff cannot point to any misconduct of any CIS employee that would warrant holding Defendants accountable for its mistakes; and fourth, the contempt of court claim is meritless. (*See id.* at 18-28).

II

**A. Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter

6

jurisdiction." *Liu v. Gonzales*, No. 07-1797, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). This standard of review differs substantially from that under Rule 12(b)(6), however, when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted). Thus, consideration of the motion does not have to be limited; rather, conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, "'[w]hen resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff.'" *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). "However, '[w]here an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited." *RLR Invs., LLC*, 2007 U.S. Dist. LEXIS 44703, at *9 (internal citations omitted).

### B. Summary judgment

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When reviewing agency action under the APA, the District Court sits as an appellate tribunal and the entire case on review is a question of law.'" *Aybar v. Johnson*, 295 F. Supp. 3d 442, 451 (D.N.J. 2018) (quoting *Soccer Centers, LLC v. Zuchowski*, No. 17-1024, 2017 U.S. Dist. LEXIS 169328, at *5 (D.N.J. Oct. 13, 2017)). Because "the administrative agency [was] the finder of fact, . . . [this Court] does not need to determine whether there are disputed facts to resolve at trial." *Id.* (quotation omitted). Thus, "[t]he Court's review is limited to the administrative record

on which the agency based its decision." *Id.* (citing 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (quoting *Soccer Centers, LLC*, 2017 U.S. Dist. LEXIS 169328, at *5).

This court reviews an agency's decision under § 706 of the Administrative Procedure Act (APA). *Christ the King Manor, Inc. v. Sec'y United States HHS*, 730 F.3d 291, 305 (3d Cir. 2013) (citing *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011)). Under § 706, courts "'hold unlawful and set aside agency action, findings, and conclusions'" that are "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Christ the King Manor, Inc.*, 730 F.3d at 305 (quoting 5 U.S.C. § 706(2)(A)). "Under that restricted standard of review, [courts] must consider whether the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,' while being careful 'not to substitute [its own] judgment for that of the agency.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Courts may consider an agency action to be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43. The review of the agency's decision "must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing

court' or 'post-hoc rationalizations' made after the disputed action." *Christ the King Manor*, Inc., 730 F.3d at 305 (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)).

Although the Act does not set forth a specific provision on this issue, the Supreme Court has held that "courts are necessarily [not] without power or jurisdiction . . . if it should clearly appear that the Secretary has acted in an arbitrary and capricious manner by ignoring the mandatory duty he owes plaintiffs under the powers granted by the Congress." *Dunlop v. Bachowski*, 421 U.S. 560, 566, 568 (1975). Thus, "a congressional purpose narrowly to limit the scope of judicial review of the Secretary's decision can, and should, be inferred in order to carry out congressional objectives in enacting the Act." *Id.* at 568. Accordingly, "the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit." *Id.* at 571.

### III

1. **Lack of Jurisdiction**

According to Defendant, Plaintiff's primary objective is to overturn the USCIS's July 24, 2017 adjustment of status determination, and thus, this Court lacks jurisdiction. In response, Plaintiff argues that this argument should be rejected because the Court has jurisdiction to review questions of law by agencies. Plaintiff frames the determination that she did not have authorization to work from June 5, 2015 to the present time as a legal determination, and thus argues this Court has jurisdiction to determine whether Plaintiff had authorization to work on that date. As a result, Plaintiff is seeking a holding from this Court that she maintained valid work authorization from June 1, 2015, to the present.

Essentially, Plaintiff is challenging the adjustment of status determination, which denied her I-485 application and found that "the documents [Plaintiff] submitted did not establish that

9

[she] had work authorization from June 1, 2015 until the present." (Am. Compl., Ex. E, ECF No. 27-5, at 1-2). From the relief requested by Plaintiff, it is clear to the Court that Plaintiff is seeking to challenge the USCIS's adjustment of status determination, which found that she did not have valid work authorization, and for that reason, denied her adjustment of status determination. However, as this Court has previously explained:

> 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of a decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter (§§ 1151-1378) to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Under § 1252(a)(2)(B), district courts do not have the jurisdiction to review the denied I-485 applications because these determinations are "in the discretion of" immigration officials acting under the authority of the Attorney General.

*Li*, 2018 U.S. Dist. LEXIS 137558, at *13-14.

Accordingly, this Court lacks jurisdiction to review the denial of Plaintiff's I-485 application. For that reason, Plaintiff's amended complaint is dismissed in its entirety.

**2. Plaintiff Fails to State a Claim**

Even addressing the merits of Plaintiff's arguments, all of her claims fail.

A. Count I

In Count I of her complaint and during oral argument, Plaintiff alleges she was authorized to work in the United States because her I-485 application was pending and because she had L-1 status. (Am. Compl. at ¶¶ 40-43). Yet, Plaintiff cannot demonstrate that the USCIS's July 24, 2017 denial of her I-485 application for adjustment of status based on her unauthorized employment activity was arbitrary, capricious, an abuse of discretion, or not in accordance with the law. A brief breakdown of the relevant statutes and agency guidance is appropriate.

i. Authorized Employment

8 C.F.R. § 274a.12(c)(9) prescribes the various situations in which an alien must apply for employment authorization, which includes I-485 applicants:

> . . . For purposes of section 245(c)(8) of the Act, *an alien will not be deemed to be an "unauthorized alien" as defined in section 274A(h)(3) of the Act while his or her properly filed Form I-485 application is pending final adjudication, if the alien has otherwise obtained permission from the [USCIS] pursuant to 8 CFR 274a.12 to engage in employment*, or if the alien had been granted employment authorization prior to the filing of the adjustment application and *such authorization does not expire during the pendency of the adjustment application.*

(emphasis added).

Moreover, an applicant is authorized to work while a properly filed adjustment application is pending if:

- The applicant applied for and USCIS authorized employment;
- USCIS granted the applicant employment authorization prior to filing an adjustment application and the authorization does not expire while the adjustment application is pending; or
- The applicant did not need to apply for work authorization, because such authorization is incident to the applicant's nonimmigrant status.

"Authorized Employment," USCIS Policy Manual, Vol. 7, Adjustment of Status, Part B, 245(a) Adjustment, Chapter 6 - Unauthorized Employment - INA 245(c)(2) and INA 245(c)(8)) [hereinafter "Policy Manual"].

ii. Unauthorized Employment

The USCIS Policy Manual begins by stating that, "[w]ith certain exceptions, a foreign national is barred from adjusting status *if . . . [h]e or she has ever engaged in unauthorized employment, whether before or after filing an adjustment application*." (Policy Manual (emphasis added)).

"Unauthorized employment" is deemed "any service or labor performed for an employer within the United States by a foreign national who is not authorized by the INA or USCIS to accept employment *or who exceeds the scope or period of the foreign national's*

11

***employment authorization***." (Unauthorized Employment, Definitions, Policy Manual; *see also* 8 C.F.R. § 247a.1(a) ("The term *unauthorized alien* means, with respect to employment of an alien at a particular time, that the alien is not at that time either: (1) Lawfully admitted for permanent residence, or (2) *authorized to be so employed by this Act or by the Attorney General*[.]") (emphasis added).

    iii.    <u>Timeframe Permitted for Unauthorized Employment</u>

Federal law permits adjust of status applicants to engage in up to 180 days of unauthorized employment. *See* 8 U.S.C. § 1255(a) (stating that the Attorney General may adjust an alien's status to that of a lawful permanent resident) and 8 U.S.C. § 1255((k)(2)(B) (indicating that an alien may be eligible to adjust his status "if . . . the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days . . . engaged in unauthorized employment").

    iv.    <u>L-1A Visa Status and Employment Authorization</u>

The Policy Manual further states that "certain categories of nonimmigrants," which include foreign nationals with L-1A visas, are authorized to engage in employment as "an incident of status," subject to any restrictions stated in the regulations. *See* 8 C.F.R. § 247a.12(b)(12) (providing that "[a]n intra-company transferee (L-1)" is considered in the class of aliens "*authorized for employment with a specific employer **incident to status** or parole*") (emphasis added); Policy Manual n. 15). "As long as the adjustment applicant complies with applicable terms and conditions of the nonimmigrant status, the applicant does not need to obtain an EAD to continue authorized employment during the time specified while the adjustment application is pending. These applicants, however, may apply for an EAD if they prefer." (Policy Manual).

In all other cases, however, "***an adjustment applicant must file an Application for Employment Authorization (Form I-765) concurrently with or subsequent to filing an***

12

***Application to Register Permanent Residence or Adjust Status (Form I-485) and await USCIS issuance of the EAD before engaging in employment.***" (Policy Manual) (emphasis added). "This includes refraining from employment after the applicant's work-authorized status or previously approved EAD expires until USCIS issues the new EAD."

v. <u>Discussion</u>

In this case, so long as Plaintiff's L-1A nonimmigrant status was valid, Plaintiff was authorized to live and work in the United States. The Defendants argue that a foreign national pursuing adjustment of status through an I-485 application does not automatically receive authorization to work in the United States simply by having filed an I-485 application. (*See* Defs.' Br. in Support of Mot. to Dismiss and Summary Judgment, at Preliminary Statement). Instead, the Plaintiff was required to have also "submitt[ed] an I-765 "Application for Employment Authorization."" (*Id.*).

Plaintiff's chief counterargument appears to be that she was not required to apply for an I-765 application for employment authorization, and thus obtain an EAD, because (1) she filed her I-465 application (which was pending) and (2) was an L-1A visa holder—and was thus authorized to work. (Am. Compl. at ¶¶ 40-43; Pl.'s Br. in Opp'n, ECF No. 32, at 1-2). Plaintiff bases her argument on the statements in the Policy Manual guidance, which she attributes, incorrectly, to "INA 245(c)(2) and INA 245(c)(8)," which states that ". . . an applicant is authorized to work while a properly filed adjustment application is pending if . . . [t]he applicant did not need to apply for work authorization, because such authorization *is incident to* the applicant's nonimmigrant status." (*Id.*; Policy Manual) (emphasis added).

Therefore, whether or not the Plaintiff was to obtain an I-765 Form and hence was authorized to work in the United States during the relevant period here is a critical issue in this

13

case because engaging in unauthorized employment (as the Defendants claim the Plaintiff did) was the basis for the USCIS's denial of her adjustment of status application.

Here, Plaintiff's L-1A nonimmigrant status expired after May 31, 2015.[2] On May 20, 2015—while Plaintiff's L-1A visa was still valid—, she filed an I-485 application to adjust her status to that of a lawful permanent resident. (Am. Compl. at ¶ 22). Plaintiff, however, failed to also file an I-765 application for employment authorization. Thus, after Plaintiff's L-1A visa expired, and yet she continued to work, she was thereafter engaged in "unauthorized employment," because she exceeded the scope of her employment authorization. *See* 8 C.F.R. § 247a.1(a). Accordingly, because Plaintiff's L-1A visa expired on May 31, 2015[3], she was required to file a Form I-765 Application for Employment Authorization concurrently with, or subsequent to, filing her Form I-485, and refrain from employment within the United States. *See* Policy Manual.

Plaintiff's assertion that she was not required to submit an I-765 and thus obtain an EAD because her work authorization was "incident to L-1 status" fails because, as explained, Plaintiff's L-1A visa had already expired during the pendency of her adjustment application, and she was therefore required to obtain proper work authorization, i.e. the I-765. *See* 8 C.F.R. § 274a.12(c)(9).

The Court must also consider the impact of the USCIS's September 25, 2018 decision amending the expiration date of Plaintiff's L-1A visa to May 31, 2016, pursuant to this Court's August 14, 2018 Memorandum and Order. *See Li*, 2018 U.S. Dist. LEXIS 137558. Under these amended dates, however, Plaintiff's claim still fails. The duration between May 31, 2016 (the proper expiration date) and July 24, 2017 (USCIS's denial of Plaintiff's first I-485 application) constitutes approximately 418 days. Plaintiff did not submit an I-765 application until August 24,

---

[2] This date was later amended. *See supra.*
[3] *See id.*

2017. (Bays Decl. ¶ 14; Pl.'s Ex. G). Thus, because Plaintiff continued to work in the United States during this time and still had not filed an I-765 application, Plaintiff engaged in approximately 418 days of unauthorized employment activity, which exceeded the permitted 180 days. *See* 8 U.S.C. § 1255(a); 8 U.S.C. § 1255((k)(2)(B). Despite Plaintiff's failure to file an I-765 application and obtain an EAD, she continued to engage in unlawful employment in the United States while her I-485 application was pending. Thus, Plaintiff's first claim fails.

B. Count II

Plaintiff's other claims fail for similar reasons. Regarding Count II, Plaintiff argues that the USCIS's 2018 grant of Plaintiff's Application for Employment Authorization (Form I-765) which issued her an employment application document based upon her approved I-140 petition and pending I-485 application forecloses any argument by Defendants that she was ineligible to work as a matter of law. (Am. Compl. at ¶¶ 44-45). This is because "[t]he USCIS cannot on one hand acknowledge her authorization to work by granting her an [employment application document] card in 2018 based on her approved I-140 application and pending I-485 application, but then claim that she had no authorization to work based on the same approved I-140 application and a pending I-485 application from May 31, 2015 to present." (*Id.* at ¶ 46). In support, Plaintiff cites *Matter of Dacanay*, 16 I. & N. Dec. 238, 240 (B.I.A. June 3, 1977) and *Salehpour v. Immigration & Naturalization Serv.*, 761 F.2d 1442, 1447-48 (9th Cir. 1985), where the courts held that the timely-filed nonimmigrant extension petitions and timely-filed nonimmigrant status petitions being granted had the effect of "inferentially affirming the continuing legality of [the aliens'] nonimmigrant status" or implicitly authorized the plaintiffs' employment.

These cases are irrelevant to the issues raised in Plaintiff's amended complaint. The adjudication of a nonimmigrant extension petitions and nonimmigrant status petitions involve

determinations of whether an alien has violated his or her status by engaging in unauthorized employment. *See* 8 C.F.R. § 214.1(c)(4) ("An extension of stay may not be approved for an applicant who failed to maintain the previously accorded status"); *see also* 8 C.F.R. § 214.1(c)(4); (e) ("Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status . . ."). Here, the later approval of an I-765 application for an EAD, on which Plaintiff hinges her arguments, does not require any determination regarding maintaining nonimmigrant status or whether the individual engaged in authorized employment.

Further, the Court fails to see how the granting of an EAD in 2018 is relevant to the period of time Plaintiff engaged in unauthorized employment (May 31, 2016 to July 24, 2017), and the subsequent denial of her I-485 application based on engaging in unauthorized employment. As stated, at that period of time, from 2016 to 2017, Plaintiff did not file an Application for Employment Authorization (Form I-765), as she has now done in 2018. These are not the same circumstances. Accordingly, this argument is without merit.

C. Count III

Regarding Count III, Plaintiff argues that "[i]t was the USCIS fault that Plaintiff did not file another L-1A extension application. Therefore, the plaintiff should be given the 240 authorized employment days she would have received had she filed another L-1A extension application." (Am. Compl. at ¶ 57). This argument fails. Plaintiff could have filed another extension, but chose instead not to:

> 21. By the time when the U.S. Consulate finished processing her visa application and issued a new L-1A visa, there were only 24 days left on her I-797A Approval when she arrived on 5/8/2015, even though her L-1A visa was valid until 3/5/2017.
>
> 22. Knowing that it is impossible to run a business successfully in 24 days and realizing that even an approved L-1A extension could not get her much time, on 5/20/2015, <u>the company submitted I-140 and I-485 on her behalf seeking adjustment of her status instead of filing another application for L-1A extension.</u>

16

(Am. Compl. at ¶¶ 21-22) (emphasis added).

D. Count IV

Finally, Count IV seeks to hold Defendant in contempt of Court for violating this Court's August 24, 2018 Memorandum and Opinion. This Court previously directed Defendant to "review the processing as well as the decision made in connection with Plaintiff's L-1A extension application." *Li*, 2018 U.S. Dist. LEXIS 137558, at *21. Following this Court's order, the USCIS reviewed its decision concerning Plaintiff's L-1A extension, and issued an amended approval notice to correct the validity dates. (USCIS Decision, Sept. 25, 2018, ECF No. 21-9, at 1). Thus, it is not clear to the Court how Defendant violated this Court's order since the USCIS reviewed its decision, as ordered.

Accordingly, Plaintiff's Amended Complaint is dismissed in its entirety.

ORDER

This matter having come before the Court on Defendants' Motion to Dismiss, or, in the alternative, for Summary Judgment (ECF No. 31), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 1ST day of October, 2019,

**ORDERED** that Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 31) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (ECF No. 27) is **DISMISSED WITH PREJUDICE**.

*/s/ Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.